# United States District Court
# Central District of California

| | |
|---|---|
| BRYAN MILLER,<br><br>    Plaintiff,<br><br> v.<br><br>DELTA AIR LINES, A DELAWARE CORPORATION, and Does 1 through 25, inclusive<br><br>    Defendants. | Case No. 2:18-cv-0218-ODW-(SK)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [13]** |

## I. INTRODUCTION

Before the Court is Defendant Delta Air Lines' ("Delta") Motion to Dismiss Plaintiff Bryan Miller's ("Miller") Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Mot., ECF No. 13.) Miller alleges claims against Delta for (1) breach of contract; (2) fraud; (3) violation of California Civil Code 54 and 54.1; and (4) violation of California Business & Professions Code § 17200. Delta moves to dismiss the Complaint because Miller fails to state sufficient facts to state actionable claims for any of his causes of action. (Mot. 1, ECF No. 13.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion with leave to amend.

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, this Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

1

## II. FACTUAL BACKGROUND

In January 2015, Miller flew from Los Angeles to Cleveland in order to undergo double inguinal hernia surgery at the Cleveland Clinic. (Compl. ¶¶ 12, 22, ECF No. 1.) Miller alleges that he purchased a pre-paid first class ticket on United Airlines leaving Los Angeles International Airport ("LAX") and arriving at Cleveland's Hopkins International Airport (CLE) on January 5, 2015. (*Id.*) He also purchased a return first class ticket on Delta Airlines, leaving CLE at 7:10 a.m., connecting at Minneapolis-Saint Paul International Airport ("MSP"), and arriving LAX on January 10, 2015. (*Id.*) Miller claims he specifically purchased the first class ticket for extra space so that he would have more room due to post-operative discomfort and to avoid "multiple unnecessary movement in and out of the wheelchair." (*Id.* ¶ 17.) Miller alleges that he also "booked a first class round trip ticket on the same Delta flight" for his spouse "to escort [him] back to Los Angeles due to the surgery and Miller's inability to lift, or move." (*Id.* ¶¶ 13, 22.)

On January 10, 2015, Miller claims that he arrived on time to depart on the first leg of his flight back to LAX, which was departing from CLE and landing in MSP. (*Id*. ¶¶ 15, 16.) Miller alleges that there was a "significant delay" on this flight due to mechanical problems, causing the plane to "leave substantially later than expected." (*Id.* ¶ 16.) The flight arrived at MSP "at or about 10:45 a.m." (*Id.* ¶¶ 16, 32.) Miller and his spouse were re-booked onto an 11:00 a.m. flight to LAX, but were assigned seats in the coach-class cabin. (*See id*. ¶¶ 16, 19.) Miller states that when he arrived at MSP, the "temperature in the terminal was frigid, … [he] was in serious pain, was wearing a fur-lined coat and was freezing." (*Id.* ¶ 18.) "Upon landing in MSP from CLE, the first thing Miller's spouse did was go and speak to a customer representative as to why two first class tickets were automatically downgraded to coach." (*Id.* ¶ 19.) Miller alleges that "[c]ustomer service at Delta was un-apologetic and did not offer a refund, voucher, hotel stay or even an apology." (*Id.* ¶ 20.) Miller claims that there were two first class tickets available in the first class cabin on the 11:00 a.m. flight to

LAX because "Delta was advertising first class seats (of which there were two) for immediate purchase, just prior to take-off" and that "when Miller's spouse spoke to the flight attendant at the gate, she did not deny that there were available seats."[2] (*Id.* ¶ 25.) "As a result of said circumstances … [Miller claims that he] was forced to spend over 8 hours in the frigid MSP airport post-surgery in extreme pain and suffering" and that he has suffered emotional distress from the experience. (*Id.* ¶¶ 27, 28.) Miller attributes his pain and suffering to "Delta's avarice and greed," and claims that Delta's conduct was "fraudulent, oppressive, reckless and wanton." (*Id.* ¶ 29.)

## II. LEGAL STANDARD

A court may dismiss a complaint pursuant to Rule 12(b)(6) for "lack of a cognizable legal theory or . . . [in]sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2): "a short and plain statement of the claim." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

The determination for whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial

---

[2] On March 26, 2018, Miller filed a Declaration and attached an alleged "copy of the availability of two first class tickets" that were available for sale from Delta's website on January 10, 2015. (Miller Decl. Ex. A., ECF No. 15.) Delta objects to this Declaration on the grounds that in an opposition to Rule 12(b)(6), it is improper for Miller to "retroactively 'incorporate' an exhibit into a challenged complaint …" (ECF No. 16-1.) The Court agrees. With the exception of documents that are capable of judicial notice, "the face of the plaintiff's complaint, and the exhibits attached thereto, [] control the Rule 12(b)(6) inquiry." See *Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998) (internal citations omitted). Accordingly, the Court **SUSTAINS** Delta's Objection to Miller's Declaration. (ECF No. 16-1.)

3

experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)). A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . 'as true . . . in the light most favorable'" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But a court need not blindly accept "conclusory [allegations], unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

In addition, Federal Rule of Civil Procedure 9(b) sets a heightened pleading standard for fraud claims and requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading standard applies to state-law claims sounding in fraud. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Under Rule 9(b), "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber*, 806 F.2d at 1401. In addition to identifying the false representations, the plaintiff "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quotations and citation omitted). To survive a motion to dismiss, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (quotations and citation omitted).

## III. DISCUSSION

### A. Breach of Contract Claim

Miller's breach of contract claim alleges that Delta failed to allow him to board the first class cabin of the 11:00 a.m. flight from MSP to LAX despite Miller having a first class ticket. (*See* Compl. ¶¶ 30–36.) Delta contends that Miller has failed to plead sufficient facts alleging a breach of contract. (Mot. 4.)

To state a claim for breach of contract under California law, a plaintiff must plead: (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *Tribeca Cos., LLC v. First American Title Ins. Co.,* 239 Cal. App. 4th 1088, 1109 (2015). "To plead the existence of a contract, a plaintiff must quote the terms of the purported contract, attach it to the complaint, or clearly allege the substance of the relevant terms." *United Med. Devices, LLC v. Blue Rock Capital, Ltd.*, No. CV16-1255 PSG(SSx), 2016 WL 9047157, at *2 (C.D. Cal. Aug. 10, 2016) (quoting *Bassam v. Bank of Am.*, No. CV15-00587 MMM(FFMx), 2015 WL 4127745, at *4 (C.D. Cal. July 8, 2015)).

Here, Miller simply alleges that "he and Delta entered a contract for a direct first class flight from MSP to LAX." (Compl. ¶ 31.) However, Miller fails to allege "enough contractual terms with sufficient factual specificity to render his claim more than 'a formalistic recitation of the elements' of a breach of contract claim." *Park v. Morgan Stanley & Co., Inc.*, No. 2:11-CV-9466-ODW(MRWx), 2012 WL 589653, at *3 (C.D. Cal. Feb. 22, 2012). In the absence of the purported contract or direct quotations, a plaintiff is required to clearly allege the relevant substantive terms of the contract. *Bassam,* WL 4127745, at *4. Miller fails to do so here. Accordingly, the Court finds that Miller has failed to allege sufficient facts to show that Delta breached the alleged contract.

Additionally, the Court finds that the allegations regarding Delta's breach are unclear. For example, Miller alleges that "he and Delta entered a contract for a direct first-class flight from MSP to LAX." (Compl. ¶ 31.) However, Miller also alleges

that he left LAX on January 5, 2015 for CLE "on a pre-paid first class ticket on United Airlines booked through Priceline" and that "[a] return first class ticket was booked on Delta Airlines, leaving Hopkins at 7:10 a.m. connecting at MSP and arriving at LAX on … January 10, 2015." (Compl. ¶ 12). It is unclear whether Miller booked the flight at issue through Priceline or directly with Delta. In any case, Miller fails to allege sufficient facts to establish to existence of a contract between him and Delta.

Miller's failure to clearly allege the substantive terms of his alleged contract with Delta is fatal to the other elements of his contract claim as well. For example, Miller is required to plausibly allege that he performed his obligations under the contract, but he does not explain what those obligations were. *Bassam*, WL 4127745, at *4. Instead, Miller argues he "did all or substantially all of the things that were required of him" and refers to paragraphs 15–16 of his Complaint; however, these two paragraphs only state the time that Miller left his hotel to the airport, that he was in a wheelchair, and that the flight was delayed because of mechanical problems. (Opp'n 5, ECF No. 14; Compl. ¶¶ 15–16.) Additionally, Miller must *allege* that he performed his obligations, not simply argue as such in opposition to a motion to dismiss. Miller's Complaint is devoid of any such allegations. Further, Miller does not state the time of his originally-booked connecting flight to LAX, only that the late arrival of the first leg of his return flight from CLE to MSP, which landed at 10:45 a.m., "should not have been problematic as there was a plane leaving at 11:00 a.m., which was a direct flight from MSP to [LAX]." (Compl. ¶ 16.) As a result, Miller's assertion that he performed his obligations under the contract is "nothing more than a threadbare conclusion." *See United Med. Devices, LLC* WL 589653, at *3 (citing *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (holding that the Court is not required to accept "legal conclusions … cast in the form of factual allegations"). Miller further argues that "Delta breached the contract by refusing to allow him to board the first class cabin, despite two vacant seats on the 11:27 a.m. flight." (Opp'n 5.) However, Miller does not explain how Delta's actions fell short of their

6

obligations of the alleged contract. Without the specific terms of the contract, Miller's allegation that Delta failed to perform its obligations falls short. Thus, the Court **GRANTS** Delta's Motion to Dismiss as to Miller's claim for breach of contract.

   **B. Fraud**

Delta argues that Miller's claim for fraud does not comply with Rule 9(b) heightened pleading requirement that circumstances constituting fraud or mistake be stated with particularity. (Mot. 5.) "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Ninth Circuit has interpreted Rule 9(b) to require allegations of fraud be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The plaintiff must also "set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 1994). Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess*, 317 F.3d at 1105 (citation omitted).

In his Complaint, Miller alleges that Delta "affirmatively represented … that if he paid consideration for a First Class direct flight from MSP to LAX … [Delta] would provide a seat in the First Class cabin with a brief lay-over." (Compl. ¶¶ 38, 40.) Miller claims that (1) this representation was made "recklessly without regard for its truth," with the intent that he rely on it; (2) he reasonably relied on this representation because he paid "significantly more" for the ticket; and (3) Delta harmed Miller by "forcing him to wait in a frigid airport," failing to maintain its First Class lounge that was unusable due to rat-infestation, and by causing him emotional distress. (*Id.* ¶¶ 41–43, 46.) Additionally, Miller alleges that Delta's conduct was

7

"fraudulent, wanton, reckless and oppressive so that exemplary damages should be awarded." (*Id.* ¶ 47.)

Delta contends that the representation that Miller refers to in his Complaint is "unspecified" and fails to meet the pleading standard required for a plaintiff to support an allegation of fraud against a corporation. (*Id.*) The Court agrees. "When alleging fraud by a corporation, the pleader's burden is greater; the pleader 'must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Kelly Moore Paint Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 14-CV-01797-MEJ, 2014 WL 5335829, at *8 (N.D. Cal. Oct. 17, 2014) (quoting *Magdaleno v. Indymac Bancorp, Inc.*, 853 F.Supp.2d 983, 993 (E.D. Cal. 2011)). Miller fails to state any particularity constituting the alleged fraud here. Not only does Miller neglect to specify with particularity what "representation" he relied upon, but as Delta points out, in his Opposition, Miller refers to a "customer relations" representative and a "gate person (flight attendant)" that spoke to Miller on the day of the flight in question. (Reply 5, ECF No. 16.) Miller could not have detrimentally relied on any representation made by a Delta Air Line employee on the day of the flight, because Miller had already purchased the ticket. Consequently, Miller has failed to plead the elements required to state a claim for fraud. Thus, the Court **GRANTS** Delta's Motion to Dismiss as to Miller's claim for fraud.

**C. State Statutory Claims: California's Disabled Persons Act, and California Business and Professions Code § 17200 et seq**

**1.** *California Civil Code §§ 54 and 54.1*

Miller's third cause of action alleges violation of California Civil Code sections 54 and 54.1 (California's Disabled Persons Act ("the DPA")). (Compl. ¶ 52.) Miller requests actual damages, punitive damages, attorney fees, and "catalyst fees to ensure that Delta be forever enjoined from employing said tactics against someone who is disabled …" (Compl. ¶ 52.)

8

"The DPA is intended to secure to disabled persons the same right as the general public to the full and free use of facilities open to the public. Its focus is upon *physical* access to public places ...." *Turner v. Ass'n of Am. Med. Colls.*, 167 Cal. App.4th 1401, 1412 (2008) (emphasis in original) (internal quotation marks and citations omitted). Section 54.1 of the DPA provides, in pertinent part, that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, … and privileges of all common carriers, … modes of transportation …, places of public accommodation, … and all other places to which the public is invited …" Cal. Civ. Code § 54(a)(1). "Full and equal access" is defined by section 54.1 to mean access that complies with the regulations developed under the federal Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12111–12117) (the "ADA"). *Id.* Under the ADA, full and equal access means that disabled individuals shall not be "screened out" by the imposition of "eligibility criteria" from enjoying goods, services, facilities, privileges, advantages, or accommodations unless such criteria can be shown to be necessary for the provision of that being offered. 42 U.S.C. § 12182(b)(2)(A)(i).

However, "[n]ot every denial of 'full and equal access' under section 54.1, … gives rise to a cause of action for damages under section 54.3. Rather section 54.3 states that a cause of action for damages arises against a person who 'denies or interferes with admittance to or enjoyment of the public facilities as specified in sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 …" *Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal. App. 4th 254, 263 (2007) (citing *Donald v. Café Royale, Inc.*, 218 Cal. App. 3d 168, 176 (1990)). Further, "section 54.3 imposes the standing requirement that the plaintiff have suffered an *actual denial of equal access* before any suit for damages can be brought." *Id.* (emphasis added).

"[T]o maintain an action for damages under section 54 et seq., an individual must take the additional step of establishing that he or she was denied equal access on

9

a particular occasion …" *Urhausen*, 155 Cal. App. 4th at 263. However, that action must be related to compliance with the handicapped access standards. *See id.* Here, Miller argues that Delta violated the DPA "by denying him fair and equal access to the first class cabin …" (Compl. ¶ 51.) However, the "access" that Miller alleges in his Complaint is simply not covered under the DPA. Miller was not denied access to the aircraft, but was downgraded to coach; his DPA claim has nothing to do with Delta violating any handicapped access standards covered by the statute. "Full and equal access" is defined by section 54.1 to mean access that complies with the regulations developed under the federal Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12111–12117)." *Urhausen*, 155 Cal. App. 4th at 261. The DPA was enacted to prevent barriers that disabled individuals may face in violation of the ADA, not to ensure access to the first class cabin of an airline. Accordingly, the Court **GRANTS** Delta's Motion to Dismiss Miller's DPA claim.[3]

### 2. California Business & Professions Code § 17200

"The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 252 (2010) (internal citations omitted). Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal Bus & Prof Code § 17203. "The California Supreme Court held that the UCL establishes three varieties of unfair competition-acts or practices which are [1] unlawful, or [2] unfair, or [3] fraudulent." *Drum*, 182 Cal. App. 4th at 253. *Id.* at 50. Since the UCL is written in the disjunctive, a business act or practice may be alleged to be all or any of the three varieties. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544 (2007). In order to state a claim under the unlawful prong, a plaintiff must allege facts that show that anything that can reasonably be characterized

---

[3] Delta argues that the Airline Deregulation Act, 49 U.S.C. § 41713 preempts this claim because "the DPA doesn't have extraterritorial application." (Mot. 7.) Because the Court finds that Miller's claim fails as a matter of pleading, it declines to address the merits of this argument.

10

as a business practice is also a violation of law. *California v. McKale*, 25 Cal.3d 626, 632 (1979). To show a violation under the fraudulent prong, a plaintiff must show that members of the public are likely to be deceived by the practice. *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010). "A plaintiff's burden thus is to demonstrate that the representations or nondisclosures in question would likely be misleading to a reasonable consumer." *Id*. Finally, under the unfair prong, three different tests are currently used by California courts to determine if a practice is unfair. *Drum*, 182 Cal. App. 4th at 256. Miller alleges that Delta violated all three prongs of the UCL. (Compl. ¶¶ 57–59.)

Delta argues that Miller has not sufficiently alleged a UCL claim under any of the three prongs of the UCL. (Reply 8.) The Court agrees. Although not entirely clear, Miller's UCL claim appears to be premised on Delta's alleged violations of the DPA. (*See* Compl. ¶ 58(d).) To the extent that Miller's UCL claim is based on DPA violations, the UCL claim fails, as discussed above.

Miller also alleges that Delta violated California Civil Code § 1714, and Government Code § 12926.[4] (Compl. ¶ 58(c–d)). Cal. Civ. Code § 1714 provides, that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." Cal. Civ. Code § 1714(a). While the Court recognizes that Miller may have been in severe pain due to his recent surgery, it seems that any "substantial injury" experienced by Miller may have been due to his own actions as opposed to Delta changing his seat on the subject flight. Hence, the "unlawful" prong of the UCL fails.

To the extent Miller's UCL claim is based on fraud, as discussed above, Miller's claim fails to meet the pleading requirements of Rule 9(b).

---

[4] Because Miller fails to cite any law or allege any facts to show how Delta violated Cal. Gov't Code § 12926, the Court declines to address the merits of this claim.

11

As to Miller's allegations regarding Delta's "unfair" conduct, Miller's Complaint also falls short. In consumer cases, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum*, 182 Cal. App. 4th at 256 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 n.12 (1999)). Subsequent to the decision in *Cel-Tech*, a split of authority developed among the California Courts of Appeal, which have applied three different tests for unfairness in consumer cases. *Id.* (citations omitted).

The test applied in one line of cases is similar to the *Cel–Tech* test, and requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 247 (citing *Cel-Tech*, 20 Cal. 4th at 187). Under this test, Miller's UCL claim fails for the reasons stated above with respect to his DPA claim—Miller failed to allege any violation or incipient violation of any statutory regulatory provision, or any significant harm to competition.

The test applied in a second line of cases is whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 247 (citing *Bardin v. Daimler Chrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006)). Here, Miller fails to allege how Delta's conduct was "immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." In his Complaint, Miller contends that "it is difficult to ascertain the utility of the conduct of Delta, other than wanton greed." (Compl. ¶ 59(b).) Miller further alleges that his harm is "huge," including "[Miller waiting] eight hours in a frigid airport in severe pain; [and] significant and serious emotional distress." (*Id.* ¶ 59(c).) However, Miller fails to explain why he did not embark the flight and instead ended up sitting in a "frigid" airport for eight hours when he had two seats, albeit in the coach section. While the Court recognizes that Miller may have been in severe pain due to his recent surgery, it

seems that any "substantial injury" experienced by Miller may have been due to his own actions as opposed to Delta changing his seat on the subject flight.

Finally, the test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal. App. 4th at 247 (citing *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597–98 (2009)). As stated above, there was no allegation and no basis to infer from the Complaint that Miller was substantially injured by Delta's conduct. Therefore, the Complaint fails to allege a claim under the UCL. Accordingly, the Court **GRANTS** Delta's Motion to Dismiss as to Miller's claim under the UCL.

### E. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that a party may amend their complaint once "as a matter of course" before a responsive pleading is served. Fed. R. Civ. P. 15(a). After that, the "party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires." *Id.* "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (internal quotations and citation omitted). But if any amendment to the pleadings would be futile, leave to amend should not be granted. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (quoting *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)).

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss, **with leave to amend**. Should Miller wish to file an amended complaint, he must do so within twenty-one days of the date of this Order. Miller must also lodge with the Court, and serve on Delta, a redlined copy of the amended pleading so that

the Court can decipher the amendments to his Complaint.

**Plaintiff's failure to file an amended complaint within 21 days of this Order may result in a dismissal of the action with prejudice**. *Evans v. Ruffin*, No. C-91-0247-SBA, 1992 WL 373204, at *3 (N.D. Cal. June 22, 1992) (dismissing case with prejudice for failure to comply with court deadline for filing amended pleading).

**IT IS SO ORDERED**

April 10, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**